J-S69036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| OMAR LYONS | : | |
| | : | |
| Appellant | : | No. 3406 EDA 2018 |

Appeal from the Judgment of Sentence Entered November 1, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004139-2014

BEFORE:   SHOGAN, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                          Filed: March 20, 2020

Appellant, Omar Lyons, appeals from the judgment of sentence imposed following his non-jury trial conviction of possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, possession of drug paraphernalia, and possession of marijuana.[1]  We affirm.

On November 27, 2013, two Philadelphia police officers were patrolling in a marked vehicle near 24th Street and Lehigh Avenue.  As the officers turned onto 24th Street, they observed a man, later identified as a Mr. Corley, leaning into a vehicle with cash in his hand.  Upon noticing the officers, Mr. Corley dropped the cash into the vehicle and stepped backwards.  The officers

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), 35 P.S. § 780-113(a)(32), and 35 P.S. § 780-113(a)(31), respectively.

frisked Mr. Corley and recovered fourteen packets of heroin stamped "Killer" and a pocketknife.

The officers asked Appellant to exit the vehicle and whether he had any weapons. Appellant stated that he did not have any firearms but that there was some marijuana in the armrest. The officers arrested Appellant and found eleven packets of heroin, also stamped "Killer," and $743 in cash on Appellant's person. The woman who owned the car Appellant was seated in then arrived on the scene and gave the officers consent to search the vehicle. During their search of the vehicle, the officers recovered two sandwich bags containing marijuana, two boxes of brand new glass jars and bags containing the corresponding lids, an empty magnetic box commonly used in drug trafficking, and a $100 bill that had been dropped in the vehicle by Mr. Corley.

Appellant was arrested and charged with PWID, possession of a controlled substance, and possession of drug paraphernalia. After the preliminary hearing, the charges were held for trial, and the Commonwealth filed an information adding the possession of marijuana charge on April 15, 2014. Appellant then filed a motion to suppress on May 20, 2014. However, due to numerous continuances granted at Appellant's request, further proceedings in this case were delayed for more than three years. Ultimately, on September 28, 2017, Appellant's counsel filed a motion to withdraw citing an irreconcilable breakdown in communication and Appellant's notification to counsel that "he is no longer in need of [his counsel's] legal services." Motion

to Withdraw, 9/28/17, ¶4.  The court granted the motion and appointed the Defender Association of Philadelphia to represent Appellant.

On December 14, 2017, a hearing was conducted on the motion to suppress.  At the conclusion of the hearing, the suppression court denied the motion.  Appellant then filed a motion to reconsider the order denying the suppression motion; after hearing argument on the motion to reconsider on July 23, 2018, the trial court orally denied the motion.[2]  N.T., 7/23/18, at 29-32.  The trial court then inquired whether Appellant was ready to continue to a waiver trial.  Appellant's counsel then indicated that Appellant expressed a desire for Mr. Corley to testify for the defense and sought an adjournment to locate Mr. Corley.  *Id.* at 32-33.  The trial court stated that it would not grant a continuance owing to the extensive delays already in prosecuting the case and provided Appellant with the choice of invoking his right to a trial by jury or proceeding directly with a waiver trial.  *Id.* at 33-34.

During his colloquy on the waiver of right to trial by jury, Appellant asserted that his appointed attorney from the Defender Association had a conflict of interest based upon the Defender Association's prior representation of Mr. Corley in a case related to the same incident.  *Id.* at 39-40.  Appellant's

_____

[2] The judge who ruled on Appellant's suppression motion retired after the December 14, 2017 hearing, and a different judge heard Appellant's motion to reconsider the order denying the suppression motion and presided over Appellant's trial.  In this memorandum, we refer to the judge who ruled initially on the suppression motion as the "suppression court" and the judge who heard the motion to reconsider and conducted Appellant's trial as the "trial court."

counsel and the Commonwealth's attorney explained that, while the Defender Association did represent the purchaser, the purchaser's motion to suppress was granted in 2014 and the charges against him were dropped before the Defender Association was appointed to represent Appellant in 2017. *Id.* at 40-41. Based upon this fact and the representation of Appellant's counsel that he did not believe that he had a conflict of interest, the trial court stated that it did not discern a conflict. *Id.* at 42. Appellant ultimately agreed to waive his right to a jury trial and completed a written waiver form. *Id.* at 43-48; Waiver of Jury Trial Form, 7/23/18.

At the conclusion of trial, the trial court found Appellant guilty of all charged offenses. On November 1, 2018, the trial court sentenced Appellant to a three-to-six year term of imprisonment followed by a consecutive five-year probationary period on the PWID charge. The possession of a controlled substance offense merged with PWID, and no further penalty was imposed on the other two charges. Appellant filed a timely notice of appeal.[3]

Appellant raises the following issues on appeal:

---

[3] The Defender Association filed a statement of errors complained of on appeal on behalf of Appellant on January 25, 2019. The Defender Association also moved to withdraw as counsel for Appellant at that time based upon its determination that Appellant had a colorable claim of ineffective assistance and trial court error based upon the Association's conflict of interest related to representation of Mr. Corley. The trial court granted the motion, appointed Appellant's current counsel, and granted new counsel additional time to file a concise statement. Appellant's current counsel filed a supplemental concise statement on March 20, 2019. The trial court filed its opinion on May 16, 2019.

1) Is it meritorious and apparent on the record that trial counsel was ineffective for failing to call the alleged buyer at the motion to suppress evidence and at trial, due to a conflict of interest created by trial counsel's dual representation of the Appellant and the alleged buyer?

2) Did the suppression court err in denying the motion to suppress evidence because the evidence was seized after the Appellant was stopped, detained, searched and arrested and after the Appellant's vehicle was stopped and searched in the absence of reasonable suspicion or probable cause?

3) Did the trial court err in permitting the introduction into evidence statements that were made by the alleged buyer that incriminated Appellant, to include statements indicating that the Appellant has sold drugs to the alleged buyer, as these statements were inadmissible hearsay, unduly prejudicial, and not subject to any hearsay exception?

4) Did the trial court err in not removing the Defender Association as the Appellant's counsel since the Defender Association had a conflict of interest requiring the appointment of new counsel for the Appellant[?] Specifically, prior to being appointed to represent the Appellant, the Defender Association represented the alleged buyer at a suppression motion, after which suppression was granted and the alleged buyer was eventually discharged; this prior representation created a conflict of interest which prevented Appellant's counsel from calling the alleged buyer as a witness in a manner free from conflicting loyalties between the past and present clients[.]

Appellant's Brief at 8.

Appellant first argues that his trial counsel, the Defender Association, provided ineffective assistance of counsel based upon the fact that he "failed to call/would not call" Mr. Corley to testify at the suppression hearing or at trial. *Id.* at 18. Appellant attributes this to the fact that the Defender Association previously represented Mr. Corley in his successful suppression motion, resulting in the charges being dropped against Mr. Corley. Appellant

asserts that Mr. Corley would have contradicted the testimony of the arresting officer and therefore would have changed the outcome of the case.

Appellant's ineffective assistance is not cognizable on direct appeal and must be deferred to collateral review under the Post Conviction Review Act (PCRA), 42 Pa.C.S. §§ 9541-9546. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) (stating that, except in limited, identified circumstances, "claims of ineffective assistance of counsel are to be deferred to PCRA review"); *Commonwealth v. Hopkins*, ___ A.3d ___, 2020 PA Super 25, *11 (February 7, 2020) (same). Three exceptions have been recognized to the general rule that ineffective assistance claims may not be brought in a direct appeal: (1) "where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice"; (2) where the defendant shows good cause and expressly waives his entitlement to PCRA review before the trial court; and (3) where the defendant is statutorily ineligible for PCRA review, such as in cases where the defendant's only sentence was to pay a fine. *Commonwealth v. Delgros*, 183 A.3d 352, 360-61 (Pa. 2018); *Holmes*, 79 A.3d at 563-64.

None of these exceptions are present here. With respect to the first exception, the grounds for direct review must be raised in a post-verdict motion to allow the trial court to exercise discretion to consider such a claim. *Holmes*, 79 A.3d at 577. Appellant did not file a post-verdict motion in this matter. Appellant likewise does not fall within the second exception because,

in such cases, the trial court may only consider claims of ineffective assistance upon good cause shown to the trial court and where the defendant knowingly and expressly waives his entitlement to PCRA review before that court. **Delgros**, 183 A.3d at 360; **Holmes**, 79 A.3d at 564, 578. Appellant did not allege good cause or waive his right to PCRA review before the trial court. Finally, Appellant has not demonstrated that he would be ineligible for PCRA review, nor do we see any basis for concluding so. **Delgros**, 183 A.3d at 361; **see also** 42 Pa.C.S. § 9543 (setting forth eligibility requirements for PCRA relief). Accordingly, we may not address the ineffective assistance claim raised in Appellant's first issue.

In his second issue, Appellant argues that the suppression court erred by denying his suppression motion because the officers lacked probable cause or reasonable suspicion to detain and search him. Appellant asserts that, owing to the fact that the officers lacked the requisite level of suspicion, the drugs, paraphernalia, and other evidence seized from his person and the vehicle must be suppressed.

Our standard of review of a ruling on a suppression motion is "whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Duke**, 208 A.3d 465, 469 (Pa. Super. 2019) (citation omitted). We are bound by the facts found by the suppression court so long as they are supported by the record, but we review its legal conclusions *de novo*. **Commonwealth v. Kane**, 210 A.3d 324, 329 (Pa. Super. 2019). The suppression court has the

sole authority as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. *Duke*, 208 A.3d at 470. "Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by the defendant." *Kane*, 210 A.3d at 329 (citation and brackets omitted).

Interactions between police and members of the public are classified into three categories: mere encounters, investigative detentions, and custodial detentions. *In Interest of A.A.*, 195 A.3d 896, 904 (Pa. 2018); *Commonwealth v. Dix*, 207 A.3d 383, 388 (Pa. Super. 2019). A mere encounter can be any formal or informal interaction between an officer and citizen and does not need to be justified by any level of police suspicion. *Dix*, 207 A.3d at 388. An investigative detention "carries an official compulsion to stop and respond" and must be supported by reasonable suspicion of unlawful activity. *Id.* (citation omitted). An officer may frisk for weapons during an investigative detention "when the officer reasonably believes the suspect may be armed and dangerous." *Id.* (citation omitted). Finally, a custodial detention occurs "when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." *Id.* (citation omitted). A custodial detention must be based upon probable cause that the individual has committed or is committing a crime. *Id.*

"When initially evaluating the level of interaction between law enforcement and a citizen to determine if a seizure occurred, courts conduct an objective examination of the totality of the surrounding circumstances." *Commonwealth v. Luczki*, 212 A.3d 530, 543 (Pa. Super. 2019) (citation and quotation marks omitted). This test focuses on "whether the suspect has in some way been restrained by physical force or show of coercive authority," but no single factor controls the ultimate determination and the courts employ an objective test to determine whether a reasonable person would have felt free to leave or terminate the encounter. *Id.* (citation omitted).

We also employ a totality-of-the-circumstances test when determining whether probable cause or reasonable suspicion exist to support the police action. *A.A.*, 195 A.3d at 904; *Commonwealth v. Burno*, 154 A.3d 764, 781 (Pa. 2017). Probable cause exists where "the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Burno*, 154 A.3d at 781 (citation omitted). In making the determination as to whether probable cause exists, courts "require only a probability, and not a *prima facie* showing, of criminal activity." *Id.* (citation omitted). Reasonable suspicion is a less stringent standard that requires "a police officer . . . to point to specific and articulable facts leading him to suspect criminal activity is afoot." *Commonwealth v. Walls*, 206 A.3d 537, 541 (Pa. Super. 2019) (citation omitted). "[C]ourts must also afford due

- 9 -

weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience[] and acknowledge that innocent facts, when considered collectively, may permit the investigative detention." *Id.* (citation omitted).

At the suppression hearing, Officer Jason Tomon[4] testified that on the evening of November 27, 2013, he and his partner were patrolling a known drug neighborhood with numerous shootings and robberies in the vicinity of 24th Street and Lehigh Avenue. N.T., 12/14/17, at 13, 20-21. On that date, Officer Tomon turned his marked police vehicle onto 24th Street and observed Mr. Corley reach into a stationary vehicle from the passenger-side window with cash in his hand towards Appellant, who was seated in the driver's seat. *Id.* at 7-8. The police vehicle turned on 24th Street, a one-way street, against the flow of traffic, and therefore the officers observed the interaction between Mr. Corley and Appellant through the windshield of Appellant's vehicle. *Id.* at 28-29. Upon noticing the presence of police, Mr. Corley dropped the cash in the car and took several steps backwards from the vehicle. *Id.* at 8-10. Officer Tomon believed he had witnessed a narcotics transaction, exited the vehicle with his partner, Officer Strubinger, and approached Mr. Corley while Officer Strubinger approached Appellant on the driver's side. *Id.* at 11, 13, 41-42. Mr. Corley tensed up and became "very . . . statute-like" and stated

---

[4] Officer Tomon was promoted to the rank of detective after November 27, 2013. N.T., 12/14/17, at 7.

without being questioned that "he just bought a hundred dollars['] worth off of him," which Officer Tomon understood to be referring to Appellant. *Id.* at 13-15. Officer Tomon observed a large bulge in Mr. Corley's pockets and performed a protective search, discovering a knife and fourteen stamped packets of heroin. *Id.* at 12, 15, 39-40.

Officer Tomon testified that he arrested Mr. Corley and placed him in the police vehicle and then returned to assist Officer Strubinger. *Id.* at 15. Officer Strubinger asked Appellant to exit the vehicle; Appellant initially declined to do so and reached towards the armrest area. *Id.* at 15. Appellant eventually complied with a second request to exit the vehicle. *Id.* Officer Strubinger then asked Appellant if he had a gun, to which Appellant responded that he did not have a gun but he had some marijuana in the armrest. *Id.* The officers then placed Appellant in handcuffs. *Id.* at 16-17. Officer Tomon searched Appellant incident to his arrest and uncovered eleven stamped packets of heroin and cash. *Id.* at 18-20. A woman then arrived on the scene and identified herself as the owner of the vehicle. *Id.* at 18. After verifying that the woman was in fact listed on the vehicle's registration, the officers obtained the woman's written consent to search the vehicle. *Id.* Upon their search of the vehicle, the officers discovered a $100 bill that Mr. Corley had dropped on the passenger seat, marijuana, and additional packaging and storage paraphernalia. *Id.* at 18-20.

The suppression court found that the officers had reasonable suspicion to approach and investigate Appellant and Mr. Corley based upon Officer

Tomon's observation of Mr. Corley reaching into the vehicle with cash in his hand. *Id.* at 58-59, 61-62. The suppression court further found that Officer Tomon had probable cause to arrest Appellant based upon the initial observation of the transaction and the additional evidence collected during their investigation and that the search of the vehicle was also proper based upon the consent obtained from the owner. *Id.* at 60-61. The court accordingly denied the motion to suppress. *Id.*

Viewing the totality of the circumstances, the suppression court's conclusion that the detention and search of Appellant was constitutionally proper is supported by the record. First, the officers were clearly warranted in approaching Appellant and Mr. Corley by virtue of their observation of Mr. Corley reaching into a vehicle with cash in his hand. The officers did not seize Appellant or Mr. Corley merely by approaching them and inquiring as to their activities. *Luczki*, 212 A.3d at 543 ("a seizure does not occur where officers merely approach a person in public and question the individual or request to see identification" (citation omitted)).

Even if Appellant and Mr. Corley were detained at this point, however, the officers clearly had reasonable suspicion to do so based upon their observation of Mr. Corley reaching in the vehicle, with cash in hand, towards Appellant and then dropping the money and backing away from the vehicle when he saw the police. *Walls*, 206 A.3d at 541. Further, once Officer Tomon searched Mr. Corley and discovered packets of what appeared to be a

controlled substance in his pocket[5] and Mr. Corley stated that he had "just bought a hundred dollars['] worth" from Appellant, N.T., 12/14/17, at 15, the officers then had probable cause to believe that Appellant had committed a criminal offense. ***Burno***, 154 A.3d at 781. Officer Tomon's basis for arresting Appellant was only reinforced by the fact that Appellant admitted to having marijuana in the vehicle when Officer Tomon asked whether he was carrying a weapon.[6] ***See Commonwealth v. Young***, 162 A.3d 524, 529-30 (Pa. Super. 2017) (defendant's statement to police during a mere encounter that he was in possession of two bags of marijuana justified his arrest and search of his person).

Once arrested, Officer Tomon lawfully searched Appellant incident to the arrest and discovered the heroin and cash on his person. ***Commonwealth v. Wilmer***, 194 A.3d 564, 568 & n.7 (Pa. 2018). The officers at this point had probable cause to search the vehicle based upon their observation of a suspected drug transaction within the vehicle and their recovery of suspected controlled substances from both parties to that transaction. ***See Commonwealth v. Bozeman***, 205 A.3d 1264, 1277 (Pa. Super. 2019) (warrantless search of a car is permitted where supported by probable cause).

---

[5] Even if the search of Mr. Corley were unconstitutional, Appellant could not challenge the search of Mr. Corley because it did not "violate[] his own, personal privacy interests." ***Commonwealth v. Powell***, 994 A.2d 1096, 1108 (Pa. Super. 2010) (citation and emphasis omitted).

[6] In his suppression motion, Appellant raised the issue of whether the officers were required to issue him warnings prior to questioning pursuant to ***Miranda v. Arizona***, 384 U.S. 436 (1966), but he has abandoned this issue on appeal.

However, the search of the car was also justified based upon the consent that the officers obtained from the vehicle's owner. **Wilmer**, 194 A.3d at 568 & n.8 (neither a warrant nor probable cause are required for a consensual search). In sum, the officers were justified in their initial approach, seizure, search of Appellant, and search of the vehicle, and the suppression court thus properly denied Appellant's suppression motion.

Appellant next argues that Officer Tomon's trial testimony that Mr. Corley stated that he had "just bought a hundred dollars' worth from" Appellant constituted hearsay that did not fall within any recognized hearsay exception. N.T., 7/23/18, at 54. Appellant rejects the trial court's explanation that the statement was admitted under the excited utterance exception to the hearsay rule, **see** Trial Court Opinion at 4 (citing Pa.R.E. 803(2)), as there was no evidence that Mr. Corley had experienced "a startling event or condition." Pa.R.E. 803(2). Appellant asserts that the limited foundation that was laid to show that the statement was an excited utterance – that Mr. Corley "tensed up" and "seemed real nervous" upon the approach of Officer Tomon, N.T., 7/23/18, at 53 – did not support that the challenged statement was made in response to a startling event.[7]

---

[7] Appellant also argues that the trial court violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution by permitting the confession of a co-defendant to be admitted without opportunity for cross examination. Appellant's Brief at 27. This issue was not preserved in his concise statement of errors complained of on appeal and is therefore waived. **See** Pa.R.A.P. 1925(b)(4)(vii); **Commonwealth v. Proctor**, 156 A.3d 261, 267 (Pa. Super. 2017).

The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. ***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019). An abuse of discretion will be found where the trial court's "judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." ***Commonwealth v. Lekka***, 210 A.3d 343, 354 (Pa. Super. 2019) (citation omitted).

Hearsay is an out-of-court statement offered for the truth of the matter asserted and is generally not admissible unless it falls within one of the exceptions set forth in the Pennsylvania Rules of Evidence. Pa.R.E. 801(c), 802; ***Commonwealth v. Savage***, 157 A.3d 519, 524 (Pa. Super. 2017). One of the exceptions outlined in the Rules of Evidence is for excited utterances, which are defined as statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Pa.R.E. 803(2).

Our Supreme Court has explained the standard for this exception as follows:

> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties . . .

***Commonwealth v. Murray***, 83 A.3d 137, 157 (Pa. 2013) (citation omitted).

In determining whether a statement is an excited utterance, we consider the following factors:

1) whether the declarant, in fact, witnessed the startling event; 2) the time that elapsed between the startling event and the declaration; 3) whether the statement was in narrative form (inadmissible); and, 4) whether the declarant spoke to others before making the statement, or had the opportunity to do so. These considerations provide the guarantees of trustworthiness which permit the admission of a hearsay statement under the excited utterance exception. It is important to note that none of these factors, except the requirement that the declarant have witnessed the startling event, is in itself dispositive. Rather, the factors are to be considered in all the surrounding circumstances to determine whether a statement is an excited utterance.

*Commonwealth v. Keys*, 814 A.2d 1256, 1258 (Pa. Super. 2003) (citations, quotation marks, and emphasis omitted).

Officer Tomon testified in relevant part during his direct examination as follows:

Q. As you were – after you had seen that white male [Mr. Corley] drop the currency in the car, what did that white male do?

A. He took a few steps back from the vehicle, Your Honor. He took a couple backwards steps.

Q. After taking these couple backwards steps, what did he do?

A. Like I said, I stopped, exited my vehicle, approached the male. When I got to him, that white male tensed up. He seemed real nervous, his body tensed up. At that time I observed that male had large bulges in his pockets. I patted him down. He did have a pocketknife on him. Doing my pat down I recognized the presence of narcotics and I recovered one bundle. I believe it was a bundle of ten, an additional bundle of four glassine blue packets stamped "Killer" from his pocket. When I recovered that, Your Honor, that's when the white male then stated to me –

[Appellant's counsel]: Objection.

- 16 -

THE COURT: Overruled.

THE WITNESS: The white male made a statement to me that he just bought a hundred dollars' worth from him, implying [Appellant].

N.T., 7/23/18, at 53-54.

It is clear that Mr. Corley made his statement that he had purchased a "hundred dollars' worth" from Appellant contemporaneously with his search and arrest, that his statement related to this event, that he had not had the opportunity to reflect or speak with others after the event occurred, and that his utterance was not in narrative form. *Murray*, 83 A.3d at 157; *Keys*, 814 A.2d at 1258. The only issue to be resolved then is whether Mr. Corley's interaction with the police constituted a "startling event," in other words that the event was an "unexpected and shocking occurrence" that caused Mr. Corley to experience an "overpowering emotion." *Murray*, 83 A.3d at 157.

We do not find an abuse of discretion in the trial court's determination that Mr. Corley's statement was precipitated by a "startling event." The record shows that when he saw that the police had caught him in the process of a drug deal, he dropped the $100 bill in his hand inside the vehicle and took several steps backwards. N.T., 7/23/18, at 53. According to Officer Tomon, Mr. Corley at this point "seemed real nervous" and "his body tensed up." *Id.* at 53. Mr. Corley's statement admitting that he had just purchased heroin from Appellant was then made immediately after Officer Tomon searched him and found 14 heroin packets on his person. *Id.* at 53-54. Mr. Corley's behavior was consistent with him being startled by the unexpected and

shocking occurrence of being arrested and found with multiple heroin packets on his person.

Even if the trial court had abused its discretion in admitting Mr. Corley's statement, we would conclude that it was harmless error. Harmless error exists where "the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." **Commonwealth v. Vucich**, 194 A.3d 1103, 1110 (Pa. Super. 2018) (citation omitted). Appellant admitted that he was in possession of heroin, N.T., 7/23/18, at 89, and therefore the only issue to be resolved was whether he had the intent to deliver the heroin. The Commonwealth adduced overwhelming additional evidence of a sale by Appellant to Mr. Corley, including Officer Tomon's witnessing of Mr. Corley reaching into the open passenger side window of the vehicle occupied by Appellant with cash in his hand, which Officer Tomon understood from his training and experience to be consistent with a drug transaction. Upon seeing the police, Mr. Corley dropped the cash inside the vehicle and backed away and tensed up. The officers then recovered packets of heroin from both Mr. Corley and Appellant with the same "Killer" stamp on them, and they also recovered $753 in cash on Appellant and drug paraphernalia from his vehicle. The Commonwealth also produced an expert witness in the area of narcotics use, packaging, and distribution who opined that Officer Tomon's description of the transaction and the physical evidence collected at the scene was consistent with Appellant having an intent

to distribute the heroin. N.T., 7/23/18, at 77-83. The expert witness made no reference to Mr. Corley's statement that he bought a "hundred dollars' worth" from Appellant, and likewise the Commonwealth did not reference the statement in its closing argument. ***Id.*** at 97-100. In light of this overwhelming other evidence to prove Appellant committed the PWID offense, Appellant did not suffer any prejudice from the admission of Officer Tomon's testimony regarding the statement of Mr. Corley, and Appellant's third issue merits no relief.

In his final issue, Appellant argues that the trial court erred by not removing Appellant's trial counsel because his counsel worked for the Defender Association, the same organization that had previously represented Mr. Corley in the latter's successful suppression motion. Appellant contends that, as a result of this dual representation, his counsel had "a glaring conflict of interest that directly prohibited trial counsel from calling the exculpatory witness, Mr. Corley, whose testimony would have exonerated" Appellant. Appellant's Brief at 27. Appellant notes that he personally raised the conflict of interest issue and expressed his desire to call Mr. Corley prior to trial.

"A defendant cannot prevail on a conflict of interest claim absent a showing of actual prejudice." ***Commonwealth v. Spotz***, 896 A.2d 1191, 1231 (Pa. 2006) (citation omitted). Prejudice may be presumed when the appellant shows that counsel was burdened by an "actual," rather than a mere "potential," conflict of interest. ***Commonwealth v. Collins***, 957 A.2d 237, 251 (Pa. 2008). An actual conflict of interest exists if, "during the course of

counsel's representation, the client's interests diverge with respect to a material fact or legal issue or to a course of action" from another client's interests. **Commonwealth v. Tharp**, 101 A.3d 736, 754 (Pa. 2014) (citation and quotation marks omitted). In other words, an actual conflict is present where counsel "actively represent[s]" the conflicting interests and those interests "adversely affect[]" the lawyer's performance. **Id.** (citation omitted). Where the clients are represented successively rather than concurrently, the conflict is only potential and the appellant must then show actual prejudice. **Id.**

Here, the record establishes that an attorney from the Defender Association represented Mr. Corley for his motion to suppress in 2014; Mr. Corley was successful in his suppression motion and the charges against him were then dropped. Appellant was represented by other counsel until 2017 when that attorney moved to withdraw his appearance based upon a breakdown in communication with Appellant. The trial court then appointed the Defender Association, which represented Appellant for his suppression hearing and non-jury trial. Because the Defender Association did not actively represent the interests of Mr. Corley and Appellant at the same time, Appellant must show that he was prejudiced by the potential conflict. **See id.** (trial counsel's cross-examination of witnesses who had previously been represented by same public defender's office was not an actual conflict of interest because representation of witnesses had terminated prior to trial).

Appellant has failed to make any showing that he was prejudiced by the Defender Association's successive representation of him and Mr. Corley. Mr. Corley was represented by a different attorney from the Defender Association, and Appellant's current counsel stated that he was unaware of the details of Mr. Corley's case and did not see a conflict of interest in his representation. N.T., 7/23/18, at 40-41. While Appellant stated to the trial court that he wanted Mr. Corley to testify at his trial and he now asserts that his trial counsel in some way prevented Mr. Corley's testimony, counsel in fact did not refuse Appellant's request and sought a brief delay in the proceedings to contact Mr. Corley and see if he was willing to testify. *Id.* at 32-33. The trial court, not Appellant's counsel, refused the request for a continuance and instead stated that Appellant would have to invoke his right to a jury trial.[8] *Id.* at 33-34. Appellant ultimately decided that he would forgo Mr. Corley's testimony and proceed to a non-jury trial. *Id.* at 43. Indeed, during his colloquy for his waiver of his right to a jury trial, he explained that he was satisfied with his attorney's services to that point. *Id.* at 44.

Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

---

[8] Appellant has not challenged the trial court's ruling conditioning his request for a continuance to seek Mr. Corley's testimony on his invocation of his right to a jury trial.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2020