J-S04036-19

2019 PA Super 80

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES EDWARD WALLS | : | |
| | : | |
| Appellant | : | No. 1385 MDA 2018 |

Appeal from the Judgment of Sentence Entered July 16, 2018
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s): CP-49-CR-0001584-2016

BEFORE: SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED MARCH 19, 2019**

Appellant, James Edward Walls, appeals from the judgment of sentence of six months' intermediate punishment, including 30 days of house arrest with electronic monitoring, entered in the Court of Common Pleas of Northumberland County after he entered a plea of no contest to one count of driving under the influence of alcohol or a controlled substance ("DUI").[1] Herein, Appellant contends the suppression court erroneously denied his motion to suppress evidence stemming from what he argues was an unlawful traffic stop unsupported by reasonable suspicion of DUI. We affirm.

We apply the following standard when reviewing the denial of a suppression motion:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

---

*   Former Justice specially assigned to the Superior Court.

supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

**Commonwealth v. Smith**, 164 A.3d 1255, 1257 (Pa.Super. 2017) (citation omitted). Moreover, the scope of review for a suppression issue is limited to the record available to the suppression court. **In re L.J.**, 79 A.3d 1073 (Pa. 2013).

At the hearing on Appellant's motion to suppress, Pennsylvania State Trooper Joshua Lee Herman, who possessed eight years' experience at the time in question, testified that Trooper Justin Rosboschil was driving in front of him on Pennsylvania State Route 405 South when Rosboschil advised by radio that "there was a vehicle coming towards me [Herman]. . . . [T]here was a truck headed my way, and it appeared that it was straddling the right fog line" of the northbound lane. N.T. 3/27/17 at 4-5.[2] Trooper Herman

---

[2] Appellant raised a hearsay objection to Trooper Herman's recitation of Trooper Rosboschil's radio advisement. N.T. at 5. The Commonwealth responded that it offered the statement not as substantive evidence supporting the stop but only as background information explaining why Trooper Herman had prepared himself to observe keenly the truck's manner

testified he slowed down in anticipation of the truck, and when he saw it he immediately noticed its right tires were across the right fog line. N.T. at 5, 10-11.

Unlike his fellow trooper, Trooper Herman was at a place along the highway where he was able to turn onto the northbound lane and follow the truck. N.T. at 5, 10, 11. Herman testified, "While following the vehicle, [I noticed] the vehicle was weaving within its lane of travel by going left to right, back and forth. And I also observed it to cross over again the right fog line in front of the Milton Transportation Company." N.T. at 5-6. He explained that he made these observations over the course of approximately 300 yards before executing the traffic stop. N.T. at 7.

On cross-examination, counsel for Appellant played the video recording taken by the dashboard-mounted video camera inside Trooper Herman's patrol car. Counsel emphasized the obscuring effect the headlight's glare had on the video, but Trooper Herman insisted that such an effect was limited to the video, as he maintained a clear view of the truck's position on the highway throughout the relevant time. N.T. at 10.

By Order of June 30, 2017, the suppression court denied Appellant's motion to suppress based on its acceptance of Trooper Herman's testimony

_____

of driving. **Id**. As we explain below, however, we conclude that Trooper Rosboschil's advisement was admissible as substantive evidence of Trooper Herman's formation of reasonable suspicion of DUI. Therefore, we consider such evidence in conducting our inquiry into whether reasonable suspicion supported the traffic stop in question.

that Appellant's truck, within a 300-yard distance, crossed the right fog line twice and weaved within its lane of travel. The court also relied on its review of the video, which, it said, depicted Appellant's truck "drifting within his lane of travel[,] touch[ing] the fog line and then mov[ing] towards the center line[.] If contact with the centerline occurred, it was brief and did not appear to result in any part of the vehicle actually crossing into the opposite lane of travel." Order, 6/30/17, at 2.

On January 18, 2018, Appellant entered his no contest plea. The court imposed Appellant's sentence, described above, on July 16, 2018, and this timely appeal followed.

Here, Appellant argues that the suppression court should have suppressed all evidence admitted against him because it stemmed from an unlawful stop unsupported by reasonable suspicion of DUI. We disagree.

The Motor Vehicle Code sets forth a law enforcement officer's authority to stop a vehicle for an alleged violation as follows:

> Whenever a police officer ... has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

> Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. In effect, the language of Section 6308(b)—to secure

> such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title—is conceptually equivalent with the underlying purpose of a **Terry** [3] stop.
>
> Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, it is encumbent [*sic*] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

**Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa.Super. 2010) (*en banc*) (citations, quotation marks, and emphasis omitted, footnote added).

Thus, there is a "distinction between the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." **Commonwealth v. Busser**, 56 A.3d 419, 423 (Pa.Super. 2012) (citation and quotation marks omitted); **see also Commonwealth v. Chase**, 960 A.2d 108, 116 (Pa. 2008)(noting "[e]xtensive case law supports the conclusion [that] a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible."); **Commonwealth v. Sands**, 887 A.2d 261, 270 (Pa.Super. 2005) (stating that "a suspected violation for DUI is in fact a scenario where further investigation almost invariably leads to the most incriminating type of evidence.").

In determining whether Trooper Herman possessed reasonable suspicion, "we must accord due weight to the specific reasonable inferences that [he] is entitled to draw from the facts in light of his experience." **Sands**,

---

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

887 A.2d at 272. Reasonable suspicion requires an evaluation of the totality of the circumstances. *Commonwealth v. Holmes*, 14 A.3d 89, 95 (Pa. 2011).

> Reasonable suspicion is a less stringent standard than [the] probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience[,] and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Brown*, 996 A.2d 473, 477 (Pa. 2010) (citations omitted).

Here, in explaining its ruling that reasonable suspicion of DUI supported the stop, the suppression court pointed to testimonial and video evidence showing Appellant's truck drifted back and forth within its lane for approximately 300 yards, during which time it went from the right fog line, to the double yellow center line, and back atop the right fog line again. The court also discussed how Trooper Herman relied on his eight years' experience to infer that the movements he observed created reasonable suspicion of DUI justifying a traffic stop to permit further investigation necessary to substantiate such suspicion. The court, therefore, denied Appellant's suppression motion.

Applying the applicable standard of review and considering comparable decisional law, we conclude that the record supports the court's factual findings and legal conclusion that reasonable suspicion of DUI supported Trooper Herman's traffic stop of Appellant.

We note, however, that the totality of information leading Trooper Herman to perform the traffic stop in question comprised not only his own observations of Appellant's driving but also his receipt of Trooper Justin Rosboschil's observations made proximate in time and location to his own. Specifically, Trooper Rosboschil advised that he had witnessed Appellant's truck "straddling the fog line" just moments before Trooper Herman then confirmed this advisement with his own observations.

Relevant precedent confirms that a law enforcement officer may conduct an investigative detention of a suspect based on reasonable suspicion formed in whole or in part upon facts observed by a reliable source, such as another officer or an identified citizen tipster.

> "To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including tips from citizens." **Commonwealth v. Swartz**, 787 A.2d 1021, 1024 (Pa.Super. 2001) *(en banc)* (citation omitted). "Indeed, identified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." **Commonwealth v. Barber**, 889 A.2d 587, 593 (Pa.Super. 2005). Similarly, "Pennsylvania law ... permits a vehicle stop based upon a radio bulletin if evidence is offered at the suppression hearing to establish reasonable suspicion." **Id**. at 594.

> [F]or a stop to be valid, someone in the police department must possess sufficient information to give rise to reasonable suspicion. The officer with the reasonable suspicion, usually the dispatcher, need not convey all of this background information to the officer who actually effectuates the stop. Thus, the police may justify the search by presenting sufficient evidence at the suppression hearing that someone in the chain of command had reasonable suspicion before the stop, even if the arresting officer did not.

*Id.* (citation omitted).

***Commonwealth v. Anthony***, 977 A.2d 1182, 1187 (Pa.Super. 2009) (holding Commonwealth established existence of reasonable suspicion of DUI solely through testimony of arresting officer who executed traffic stop exclusively upon highly detailed information supplied in dispatch relaying observations of a named-citizen informant maintaining contact with erratic driver).

Therefore, we examine whether Trooper Herman's possession of Trooper Rosboschil's advisement coupled with his own observations supplied reasonable suspicion of DUI permitting the investigative detention that followed. As discussed, Trooper Herman testified that his fellow trooper warned him of an oncoming truck straddling the right fog line. Trooper Herman slowed to position himself to make a U-turn, which he completed after witnessing Appellant's truck riding along the right fog line. After turning to follow the truck, Trooper Herman witnessed it drift within its lane, from fog line to the double yellow center line, and back to the fog line, all within 300 yards before the trooper activated his overhead lights to conduct a traffic stop.

In **Sands**, this Court held that reasonable suspicion of DUI was formed when a qualified officer observed a vehicle's "unsteady weaving progress" as it drifted across the fog line three times on a portion of road free from obstructions. **Id.** at 272. **Sands**, therefore, supports the conclusion that information available to Trooper Herman at the critical time was, likewise, sufficient to establish reasonable suspicion of DUI. Consequently, Trooper Herman's traffic stop was not improper, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/19/2019