J-A30026-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL KEITH MOYER | : | No. 805 MDA 2019 |

Appeal from the Order Dated April 16, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000866-2018

BEFORE:   DUBOW, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED FEBRUARY 18, 2020**

The Commonwealth appeals from the order granting Appellee Daniel Keith Moyer's suppression motion.[1]  The Commonwealth asserts that the trial court erred when it suppressed evidence, including a gun and drug paraphernalia, obtained after the stop of a vehicle operated by Appellee.  We affirm.

The trial court set forth the following findings of fact regarding the underlying vehicle stop:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth certified that the trial court's suppression order terminated or substantially handicapped the prosecution of this matter at the time it filed its notice of appeal from this interlocutory order.  **See** Notice of Appeal, 5/20/19; Pa.R.A.P. 311(d).

1. On November 5, 2017, at approximately 1:30 a.m., Chief Steven Stinsky of the Fleetwood Police Department was on patrol in a marked patrol vehicle.

2. Chief Stinsky has been a police officer for more than thirty years and formerly worked for the Pennsylvania State Police.

3. Chief Stinsky was driving east on Arch Street and was approaching Franklin Street.

4. Chief Stinsky credibly testified that a vehicle was traveling toward him in the opposite lane of travel.

5. The vehicle made a right turn onto Franklin Street which Chief Stinsky described as slow and wide.

6. Because of the wide turn, the vehicle was in the lane of oncoming traffic for less than five seconds before it returned to the correct lane.

7. There was no oncoming traffic at the time the vehicle crossed into the wrong lane.

8. Franklin Street is not perpendicular to Arch Street.

9. When making a right turn from Arch Street onto Franklin Street, the angle is less than ninety degrees.

10. Chief Stinsky followed the vehicle on Franklin Street for approximately one thousand four hundred feet.

11. During that time, Chief Stinsky testified that the vehicle was weaving in its lane and traveling at odd rates of speed.

12. The vehicle was not speeding.

13. The vehicle then turned into the parking lot of the Fleetwood Bible Church.

14. The vehicle pulled into the lot before Chief Stinsky activated his emergency lights.

15. Chief Stinsky credibly testified that he pulled into the lot and activated his lights because he thought that there was possibly an issue with the driver.

Trial Ct. Order, 4/16/19, at 3-4.

After approaching Appellee's vehicle, Chief Stinsky observed that Appellee was the driver and only occupant of the vehicle. Additionally, Chief Stinsky noticed Appellee's eyes were bloodshot and watery and his face was flushed. During the ensuing investigation, Chief Stinsky obtained information that Appellee had outstanding warrants for traffic violations and removed Appellee from the vehicle. A search revealed the presence of a 9mm pistol and a small ziplock bag of methamphetamine inside the vehicle.

On November 6, 2017, Appellee was charged with receiving stolen property, firearms not to be carried without a license, possession of a controlled substance, driving under the influence of alcohol, and related offenses.[2] Appellee filed a motion to suppress evidence challenging the grounds for the traffic stop. **See** Omnibus Mot., 7/24/18, at 3. The trial court conducted a suppression hearing on February 8, 2019. At the conclusion of the hearing, the Commonwealth argued that a reasonable suspicion standard should apply.[3] N.T., 2/8/19, at 17.

On April 16, 2019, the trial court granted Appellee's motion to suppress. The trial court determined that "a wide turn onto a street that is less than perpendicular coupled with weaving within a lane over a distance of one

---

[2] 18 Pa.C.S. §§ 3925(a), 6106(a)(1); 35 P.S. § 780-113(a)(16); and 75 Pa.C.S. § 3802(a)(2), respectively.

[3] The Commonwealth did not argue probable cause. **See** N.T., 2/8/19, at 17.

thousand four hundred feet while driving within the speed limit does not amount to reasonable suspicion to conduct a traffic stop." Order at 6.

The Commonwealth timely filed this appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed a responsive Rule 1925(a) opinion.[4]

The Commonwealth raises a single issue for our review:

> Did Chief Stinsky have reasonable suspicion and/or probable cause to believe that [Appellee] violated a provision of the motor vehicle code?

Commonwealth's Brief at 4.

In its brief,[5] the Commonwealth asserts that it established that Chief Stinsky had reasonable suspicion to stop Appellee for a suspected DUI pursuant to 75 Pa.C.S. § 6308(b). *Id.* at 12. Alternatively, the Commonwealth argues that Chief Stinsky had probable cause to stop Appellee for a violation of 75 Pa.C.S. § 3309 (driving on roadways laned for traffic). *Id.* at 14. We address each argument below.

Initially, we summarize the principles governing our review. In reviewing the grant of a motion to suppress,

---

[4] Initially, the trial court did not consider whether probable cause existed to stop Appellee for a traffic offense. *See* Order at 5. However, the trial court responded to the Commonwealth's Rule 1925(b) statement claiming, in part, that probable cause existed to stop Appellee. *See* Commonwealth's Rule 1925(b) Statement; Trial Ct. Op. at 2-4.

[5] Appellee did not submit a brief.

we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. We may only consider evidence presented at the suppression hearing. In addition, because [Appellee] prevailed on this issue before the suppression court, we consider only the [Appellee's] evidence and so much of the Commonwealth's evidence as remains uncontradicted when read in the context of the record as a whole. We may reverse only if the legal conclusions drawn from the facts are in error.

*Commonwealth v. Hemingway*, 192 A.3d 126, 129 (Pa. Super. 2018)

(citation omitted).

The Motor Vehicle Code provides that

[w]henever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle registration, proof of financial responsibility, vehicle identification number, or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). This Court has explained that,

[t]raffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. In effect, the language of Section 6308(b)—to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title—is conceptually equivalent with the underlying purpose of a *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] stop.

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, it is [i]ncumbent upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.

- 5 -

***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*)

(citations and internal quotation marks omitted).

> Accordingly, when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion for the stop.

***Commonwealth v. Salter***, 121 A.3d 987, 993 (Pa. Super. 2015). Under either standard, "the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." ***Id.*** at 996 (citation and internal quotation marks omitted).

The Commonwealth first argues that Chief Stinsky's observations of Appellee's vehicle provided the reasonable suspicion required to support a traffic stop to investigate. Commonwealth's Brief at 13. The Commonwealth emphasizes that Chief Stinsky initially observed Appellee making the slow and wide turn onto Franklin Street during which his vehicle crossed the double yellow line. ***Id.*** at 12. The Commonwealth notes that Chief Stinsky then followed Appellee for approximately 1,400 feet on Franklin Street and observed that "[t]he speed of the vehicle varied—it would speed up and slow down intermittently—and the vehicle weaved within its lane." ***Id.***

When assessing whether reasonable suspicion existed to stop a vehicle and conduct an investigation,

we must accord due weight to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. Reasonable suspicion requires an evaluation of the totality of the circumstances.

> Reasonable suspicion is a less stringent standard than the probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience, and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Walls*, 206 A.3d 537, 541-42 (Pa. Super. 2019) (citations omitted and formatting altered), *appeal denied*, 218 A.3d 393 (Pa. 2019). "[A]n investigative stop of a moving vehicle to be valid must be based upon objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity." *Commonwealth v. Sands*, 887 A.2d 261, 269 (Pa. Super. 2005) (citation and emphasis omitted).

In *Walls*, for example, this Court affirmed the trial court's ruling that reasonable suspicion existed where the defendant's vehicle "drifted back and forth within its lane for approximately 300 yards, during which time it went from the right fog line, to the double yellow center line, and back atop the right fog line again." *Walls*, 206 A.3d at 542. In that case, the trial court also "discussed how [the Pennsylvania State Trooper] relied on his eight years' experience to infer that the movements he observed created reasonable suspicion of DUI justifying a traffic stop to permit further investigation

necessary to substantiate such suspicion." *Id.* We added that the trooper also received a report from another officer that the defendant's vehicle was "straddling the right fog line," shortly before the trooper began following the vehicle and made his own observations of the defendant's erratic driving. *Id.* at 543.

Instantly, Chief Stinsky testified as follows. At approximately 1:30 a.m., he was patrolling in a marked police car driving eastbound on Arch Street approaching Franklin Street. He observed Appellee's vehicle traveling westbound on Arch Street, approaching the Franklin Street intersection. Appellee stopped at the stop sign at the intersection of Arch and Franklin Streets and turned right onto Franklin Street. Chief Stinsky testified that Appellee "made the turn very slowly and very wide." N.T. at 5. Chief Stinsky stated that "[o]ver half of [Appellee's] vehicle at least was in the opposite lane of travel," for "less than five seconds probably." *Id.* at 12. Chief Stinsky also estimated that Appellee returned to the proper lane of travel "somewhere between [100] and 200 feet" from the intersection. *Id.* at 11.

During cross-examination, Chief Stinsky described the turn from Arch Street to Franklin Street as follows:

> Q Would you agree with me that Arch Street where [Appellee's] vehicle was traveling is not exactly perpendicular to North Franklin Street?
>
> A Yes.
>
> Q Meaning it's off to an angle that creates an awkward right-hand turn for motorists; would you agree with me?

A It's not perpendicular. I can't speak for the motorists who are driving there to assume what they were doing. I can tell you I see several hundred people do it without problem.

*Id.* at 9-10. Appellee also presented depictions of the area around the intersection of Arch and Franklin Streets from "Google Maps."

Chief Stinsky turned onto Franklin Street and followed Appellee for approximately 1,400 feet. *Id.* at 9. Chief Stinsky testified:

The vehicle [wa]s traveling at odd rates of speed. It would speed up, slow down, speed up, slow down, weave a bit in the lane—so that's about two blocks that are within the Borough, and there's no parking on those streets. There really isn't a shoulder. So just as we exited the Borough I moved up close behind the car, my intention to initiate a traffic stop, and as I pulled in behind the car, the car made a right turn into the driveway of the Fleetwood Bible church. I pulled in behind the vehicle and activated my emergency equipment.

*Id.* at 5. On cross-examination, Chief Stinsky noted that Appellee was driving within the proper speed limit. *Id.* at 12.

Chief Stinsky testified that he suspected that

There was some issue with [Appellee] whether he was sleepy, whether that he was intoxicated. It was the time right about when bars were closing in the area. He was coming from the area where there's the Fleetwood Legion; was about two blocks behind him. So I approached. So I was thinking there was a possibly some issue with the driver.

*Id.* at 5. When Appellee's counsel asked whether he believed Appellee was lost, Chief Stinsky responded:

I didn't know what to believe, sir. The whole reason for the stop was to determine if he was in some kind of distress. I observed the violation of him crossing into the oncoming lane of travel, and I saw what appeared to be erratic driving movements. That could

- 9 -

have been any number of things. That was going to be based upon the contact I had with the motorist.

*Id.* at 14.

Here, there is no dispute that Chief Stinsky was an experienced law enforcement officer. *See id.* at 4. The underlying stop occurred around the time when bars would close. *See id.* at 5. Although there were restaurants and bars in the area that Appellee was traveling, there was no evidence that Appellee was in one of them. *See id.* at 5. Additionally, the Commonwealth relied on testimony about (1) Appellee's very slow and very wide turn during which over half of Appellee's vehicle crossed the double yellow lines on Franklin Street for less than five seconds, (2) Appellee's "odd rates of speed," wherein he would "speed up [and] slow down," and (3) the fact that Appellee "weaved in his lane a bit" over some two blocks within Fleetwood. *See id.* at 5, 12.

Having considered the totality of the circumstances, we find no basis to reverse the trial court. We acknowledge that this is a close case because there were indicia that Appellee operated his vehicle in an erratic fashion. *See Walls*, 206 A.3d at 542-43 (finding reasonable suspicion based on a vehicle that "drifted back and forth within its lane for approximately 300 yards, during which time it went from the right fog line, to the double yellow center line, and back atop the right fog line again"). However, without further specific, articulable, and objective facts in the record, we find no basis to conclude that the trial court erred in its factual and legal conclusions. Further, because the

- 10 -

record supports the trial court's findings and legal conclusions, we will not disturb its ruling. **See Hemingway**, 192 A.3d at 129. Accordingly, we conclude that the Commonwealth has not met its burden of establishing reasonable suspicion.

The Commonwealth next argues that it established probable cause to stop Appellee for a violation of 75 Pa.C.S. § 3309(1), which provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S. § 3309(1). Because the Commonwealth did not argue probable cause at the suppression hearing, this argument is waived. **See** N.T., 2/8/19, at 17; **see also Salter**, 993 A.2d at 996; Pa.R.A.P. 302(a).

In any event, this Court has stated that to establish probable cause,[6]

> [t]he officer must be able to articulate specific facts possessed by him at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in some violation of some provision of the Vehicle Code. Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference.

**Commonwealth v. Lindblom**, 854 A.2d 604, 607 (Pa. Super. 2004) (citation omitted). As this Court noted in **Commonwealth v. Enick**, 70 A.3d 843 (Pa. Super. 2013), that language of Section 3309(1) "requires motorists to

---

[6] A stop for a violation of Section 3309(1) requires probable cause. **See Feczko**, 10 A.3d at 1292.

maintain a single lane 'as nearly as practicable[,]'" which permits consideration of "minor deviations."  **Enick**, 70 A.3d at 847 (noting other traffic laws do not contain similar language permitting minor deviations).

Instantly, we conclude that the Commonwealth failed to establish probable cause.  **See Hemingway**, 192 A.3d at 129.  Appellee came to a stop on Arch Street before turning onto Franklin Street.  The turn onto Franklin Street was at an acute angle.  Appellant made a slow and wide right turn onto Franklin Street.  While the turn was wide enough that half of his vehicle crossed the yellow line on Franklin Street, he returned to a proper lane of travel in less than five seconds.  As the trial court noted there were no other cars present when Appellee made the turn.  Given the totality of these circumstances, we agree with the trial court that the Commonwealth did not demonstrate probable cause to stop Appellee for a violation of Section 3309(1).

Order affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/18/2020