J-A18021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HEATHER LYNN YOUNT | : | No. 1343 WDA 2020 |

Appeal from the Order Entered November 18, 2020
In the Court of Common Pleas of Armstrong County Criminal Division at
No(s): CP-03-CR-0000106-2020

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.: **FILED: NOVEMBER 4, 2021**

The Commonwealth appeals from the order granting the suppression motion filed by Appellee Heather Lynn Yount. The Commonwealth argues that the suppression court erred in concluding that police did not have reasonable suspicion to conduct a traffic stop for driving under the influence (DUI). We affirm.

The suppression court summarized the underlying facts of this matter as follows:

> On November 4, 2019, at approximately 1:00 a.m., Troopers Travis Turkalj and Michael Dunlap (the troopers) were traveling northbound on State Route 28 in Butler County, Pennsylvania. Route 28 at this point is a four-lane, divided highway.
>
> As the troopers approached the northbound on-ramp from the Freeport exit, they observed a silver GMC pickup truck traveling on the on-ramp. The truck, for a short distance, touched, straddled, or crossed the outside fog line on the on-ramp before merging onto Route 28. Also before

merging, the operator of the truck activated the truck's left turn signal for several seconds and then turned the signal off. When the truck merged, the signal was not activated. The troopers turned into the right lane of Route 28 and followed the truck for several miles, into Armstrong County. As they followed, the troopers observed the truck touch the white fog line two or three times. The pickup truck did not touch the center broken white line or weave within its lane.

While following the truck, the troopers ran its license plate registration number and discovered that the registered owner and presumed driver of the vehicle, Kelly Lash, had a prior drug-related driving under the influence (DUI) conviction.

While following the truck, the troopers discussed their knowledge of the prior criminal history of Lash and his frequent companion, [Appellee]. The troopers did not at that point physically identify Lash as the driver or any individuals in the passenger seat.

The troopers eventually initiated a traffic stop by activating their emergency lights at a point when the truck had drifted onto the white fog line. After the troopers activated their lights, the operator of the truck applied the brakes, which was the first time the troopers discovered that the truck's rear center brake light was not operational.

The troopers approached both the driver and passenger windows of the truck and discovered that [Appellee] was riding as a passenger.

Based on the events that followed, [Appellee] was arrested and charged with possession with intent to deliver (PWID), possession of a controlled substance, possession of drug paraphernalia, and false identification to authorities.[1]

Suppression Ct. Mem. & Order, 11/18/2018, at 5.

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(32), and 18 Pa.C.S. § 4914(a), respectively.

Appellee subsequently filed a motion to suppress. Therein, Appellee argued that police did not have reasonable suspicion to stop Lash's vehicle, in which she had been riding as a passenger. Suppression Mot., 5/1/20, at 1-2 (unpaginated). At the suppression hearing, the Commonwealth presented testimony from Trooper Turkalj, who articulated the basis for the stop as follows: "We were suspicious of DUI. [The driver had] crossed the fog line, failed to use a signal properly, and there was no third operating brake light." *See* N.T. Suppression Hr'g, 11/16/20, at 9. The Commonwealth also introduced the dash cam footage from the stop, which showed Lash merging onto Route 28, then driving on the highway for several miles.[2] *See* Commonwealth's Ex. 1. Ultimately, the Commonwealth made two arguments in opposition to Appellee's motion: (1) Trooper Turkalj had reasonable suspicion to stop Lash's vehicle for DUI, and (2) Appellee did not establish that she had an expectation of privacy. *See* N.T. Suppression Hr'g at 27-28. At the conclusion of the hearing, the suppression court took the matter under advisement.

On November 18, 2020, the suppression court issued a memorandum and order granting Appellee's motion to suppress. First, the court explained that it had reviewed the dash cam footage, which showed that Lash made

---

[2] The Commonwealth did not play the video during the suppression hearing. Instead, the Commonwealth stated that it had "no objection to the [c]ourt taking the dash cam video and viewing it in chambers or wherever it pleases the Court. The video is going to show what it's going to show." *See* N.T. Suppression Hr'g at 4-5.

- 3 -

"only "*de minimis* movements toward or touching the white fog line."
Suppression Ct. Mem. & Order at 1, 3. Further, the court observed that Lash
did not fail to properly signal while merging onto the highway or commit any
other traffic infractions prior to the stop. *Id.* at 3-4. Finally, the court noted
that the troopers initiated the stop **before** observing the broken brake light
and that, therefore, they could not rely on that fact to establish reasonable
suspicion or probable cause. *Id.* at 4. Additionally, the court explained:

> The troopers did not possess reasonable suspicion to believe that
> the truck's driver, Lash, was driving under the influence of alcohol
> or a controlled substance or that he and/or [Appellee] were
> otherwise engaged in criminal activity. The troopers did not
> sufficiently identify [Appellee] as a passenger of the vehicle until
> after the stop. Thus, any background information the troopers
> might have obtained about her could not provide reasonable
> suspicion. Further, although the troopers discovered Lash's prior
> drug-related DUI conviction, the specifics of the conviction,
> including when it occurred, were never made part of the record
> and, in any event, could not themselves provide reasonable
> suspicion. The troopers did not otherwise observe sufficient
> erratic driving or other evidence of intoxication or criminal activity
> to provide them with reasonable suspicion to justify the stop.

*Id.* at 4 (some formatting altered).

Ultimately, the suppression court concluded that because the troopers
did not have reasonable suspicion to stop Lash's vehicle for a possible DUI,
"the stop was unlawful and in violation of the [C]onstitutions of the United
States and the Commonwealth of Pennsylvania." *Id.* at 5. Accordingly, the
court ordered that "[a]ll evidence obtained subsequent to the traffic stop,
being the fruit of it, must therefore be suppressed." *Id.*

- 4 -

The Commonwealth filed a timely notice of appeal[3] and a court-ordered Pa.R.A.P. 1925(b) statement. The suppression court issued a Rule 1925(a) opinion addressing the Commonwealth's claims. *See* Rule 1925(a) Op., 1/6/21, at 2-7. Although the court addressed the Commonwealth's argument concerning the independent source doctrine, the court noted that the Commonwealth did not argue that issue before the suppression court and had instead raised the claim for the first time on appeal. *Id.* at 5.

On appeal, the Commonwealth raises the following issues:

1. The [suppression] court erred in concluding that the traffic stop was not supported by reasonable suspicion to further investigate a suspected DUI violation.

2. The [suppression] court erred in determining that Appellee established a reasonable expectation of privacy in the area(s) searched or item(s) seized, or, that she was not required to do so.

3. The [suppression] court erred in concluding that the seizure of Appellee pursuant to an active parole warrant did not provide a separate and legal source of evidence pursuant to the independent source doctrine.

Commonwealth's Brief at 4.

In its first issue, the Commonwealth argues that "[t]he troopers possessed reasonable suspicion to support an investigatory traffic stop due to

---

[3] The Commonwealth certified in its notice of appeal that the suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case, pursuant to Pa.R.A.P. 311(d). Accordingly, this appeal is properly before us for review. *See Commonwealth v. Cosnek*, 836 A.2d 871, 877 (Pa. 2003) (explaining that Rule 311(d) applies to pretrial rulings that result in suppression, preclusion, or exclusion of Commonwealth's evidence).

witnessing [Lash's] vehicle driving in an erratic manner at approximately 1:00 A.M. on State Route 28, a divided four-lane highway." *Id.* at 18. In support, the Commonwealth asserts that the troopers observed Lash's truck "straddle the fog line on the ramp before merging onto State Route 28 and hit and/or cross the fog lines several times while traveling north after merging onto State Route 28." *Id.* at 18. Further, the Commonwealth notes that "Trooper Turkalj had arrested the registered owner of the same pickup truck for DUI within only four (4) years of the date of the facts underlying the instant case." *Id.* The Commonwealth concludes that "[t]he collective effect of the troopers' observations, knowledge, and experience clearly established reasonable suspicion to stop the vehicle for suspicion of a DUI violation." *Id.* at 12. Therefore, the Commonwealth argues that the suppression court erred in granting Appellee's motion to suppress. *Id.* at 21-22 (citing ***Commonwealth v. Sands***, 887 A.2d 261, 270 (Pa. Super. 2005)).

When reviewing an order granting a defense motion to suppress, our standard of review is as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record,[4] remains uncontradicted. The suppression court's

---

[4] Although not at issue in the instant case, we note that this Court's scope of review in a suppression matter no longer includes the entire record. ***See In re L.J.***, 79 A.3d 1073 (Pa. 2013) (holding that the scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing, and does not include the record of the subsequent trial absent extraordinary circumstances).

findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa. Super. 2016) (citations omitted and formatting altered).

A traffic stop based on reasonable suspicion must serve an investigatory purpose, while a stop based on an observed vehicle code violation or "non-investigable offense" must be supported by probable cause. *Commonwealth v. Harris*, 176 A.3d 1009, 1019 (Pa. Super. 2017). "Thus, there is a distinction between the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the Motor Vehicle Code." *Commonwealth v. Walls*, 206 A.3d 537, 541 (Pa. Super. 2019) (citation and quotation marks omitted), *appeal denied*, 218 A.3d 393 (Pa. 2019); *see also Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008) (stating that "[e]xtensive case law supports the conclusion [that] a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible"); *Sands*, 887 A.2d at 270 (stating that "a suspected violation for DUI is in fact a scenario where further investigation almost invariably leads to the most incriminating type of evidence").

In determining whether an officer possesses reasonable suspicion, "we must accord due weight to the specific reasonable inferences [that] he is

entitled to draw from the facts in light of his experience." ***Sands***, 887 A.2d at 272 (citation omitted and formatting altered). Reasonable suspicion requires an evaluation of the totality of the circumstances. ***Commonwealth v. Holmes***, 14 A.3d 89, 95-96 (Pa. 2011).

> Reasonable suspicion is a less stringent standard than [the] probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience[,] and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

***Commonwealth v. Brown***, 996 A.2d 473, 477 (Pa. 2010) (citations and quotation marks omitted); ***see also Sands***, 887 A.2d at 272 (reiterating that "the officer must be able to relay specific and articulable facts that would give rise to a reasonable suspicion that the person is driving under the influence").

In ***Sands***, the officer stopped a defendant for DUI after he observed the vehicle making "unsteady, weaving progress" on a four-lane highway shortly after midnight. ***Sands***, 887 A.2d at 263. The driver filed a suppression motion challenging the legality of the stop. ***Id.*** at 264. At the suppression hearing, the officer testified that his "attention was drawn to the [d]efendant's vehicle due to its unsteady, weaving progress." ***Id.*** at 263. Then, while observing the vehicle, the officer observed three instances where the defendant crossed over the fog line and onto the shoulder of the road by

approximately three feet, at which point he would drift back into the lane. *Id.* The officer noted that although the defendant was driving on a "relatively straight highway, . . . [the defendant's] car appeared unable to stay in its lane." *Id.* After the trial court denied the suppression motion, the defendant appealed.

On appeal, the *Sands* Court agreed with the trial court that the officer had reasonable suspicion to conduct a DUI stop. Specifically, we explained that the officer observed the defendant "drift across a clearly visible fog line three times. Each time, [the defendant] would cross over the fog line by approximately three feet and then slowly drift back. This occurred on a portion of road without any sharp curves or obstructions to explain the weaving." *Id.* at 272. Finally, the Court noted that the officer "had made between forty and fifty driving under the influence arrests at the time that he stopped [the defendant,]" and concluded that "[i]n light of his experience and his specific articulable observations, . . . [the officer] possessed reasonable suspicion that [the defendant] was driving under the influence." *Id.*

Here, the suppression court reviewed the video footage and concluded that the troopers did not "observe sufficient erratic driving or other evidence of intoxication or criminal activity to provide them with reasonable suspicion to justify the stop" of Lash's vehicle. *See* Suppression Ct. Mem. & Order at 4.

In its Rule 1925(a) opinion, the suppression court explained:

[T]he troopers observed nothing that would give them any articulable and reasonable suspicion that the driver, who at that point presumably was Lash, was operating the motor vehicle under the influence. [The troopers] did not, contrary to their testimony, observe any motor vehicle code violations, did not observe any erratic driving, and had no information other than the suspected identity of the driver and his prior DUI conviction to support an investigatory stop. The [c]ourt continues to conclude that the troopers did not have reasonable suspicion to believe that the vehicle's driver was under the influence. Because the stop was not supported on any other valid grounds, it was unlawfully conducted in violation of both the Pennsylvania and United States [C]onstitutions.

Rule 1925(a) Op. at 3 (some formatting altered)

Following our review of the suppression hearing and the video footage from the stop, we conclude that the suppression court's factual findings are supported by the record. **See Korn**, 139 A.3d at 252. As noted by the suppression court, the video footage belies Trooper Turkalj's testimony that Lash was driving erratically. **See** Commonwealth's Ex. 1. Although Lash closely followed the fog line while driving in the right-hand lane, he did not cross into the shoulder of the highway or drift out of his lane. **Cf. Sands**, 887 A.2d at 263 (noting that officers observed "unsteady, weaving progress" by the defendant, who crossed the fog line by three feet and appeared "unable to stay in its lane"). Therefore, we agree with the suppression court that the traffic stop was illegal because the troopers did not have reasonable suspicion

to stop Lash's vehicle for a DUI.[5]   Accordingly, the Commonwealth is not entitled to relief on this claim.

Because we conclude that the initial traffic stop was illegal, we also agree with the suppression court's conclusion that Appellee was not required to establish an expectation of privacy in the vehicle. *See Commonwealth v. Shabezz*, 166 A.3d 278, 290-91 (Pa. 2017) (stating that a passenger is not required to establish an expectation of privacy in a vehicle that was unlawfully seized because the "discovery of contraband was a direct and immediate consequence of the seizure, and, thus, was an 'exploitation' of the constitutional violation").   Therefore, the Commonwealth is not entitled to relief on this claim.

In its remaining issue, the Commonwealth argues that "the existence and execution of the active state parole warrant constituted an independent source of probable cause to seize [] Appellee and purged any taint attributable to the traffic stop." Commonwealth's Brief at 34.  The Commonwealth asserts that if this Court agrees with suppression court in finding that "the traffic stop was illegal and that [] Appellee did not need to establish an expectation of privacy for that reason alone, then an analysis into the reason why [] Appellee was in custody at the time of the discovery of the evidence is necessary." *Id.*

_____

[5] Further, as noted by the trial court, Trooper Turkalj's knowledge about Lash's prior DUI arrest did not give rise to a reasonable suspicion that Lash was driving under the influence on the night of the vehicle stop. *See* Rule 1925(a) Op. at 4 (noting that "the specifics of [Lash's prior] conviction, including when it occurred, were never made part of the record and, in any event, could not themselves provide reasonable suspicion").

- 11 -

at 26. Therefore, the Commonwealth contends that this Court should evaluate whether the discovery of Appellee's state parole warrant constituted an intervening event that cured the initial illegality of the traffic stop. *Id.*

However, as noted by the suppression court, the Commonwealth made no argument pertaining to the independent source doctrine at the suppression hearing. *See* Rule 1925(a) Op. at 5. Instead, the Commonwealth focused solely on (1) its claim that Lash was driving erratically; and (2) the fact that Appellee did not establish an expectation of privacy in the vehicle. *See* N.T. Suppression Hr'g at 26-28. Therefore, with respect to the Commonwealth's claim concerning the independent source doctrine, that issue is waived. *See* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"); *see also Commonwealth v. Williams*, 900 A.2d 906, 909 (Pa. Super. 2006) (noting that the inclusion of an issue in a Rule 1925(b) statement will "not revive issues that were waived in earlier proceedings" (citation omitted)). Accordingly, the Commonwealth is not entitled to relief.

For these reasons, we affirm the suppression court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/4/2021</u>