J-S20010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
DANNY LEE LOWER   :
  :
Appellant   :   No. 1413 MDA 2023

Appeal from the Judgment of Sentence Entered October 10, 2023
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002515-2022

BEFORE:   OLSON, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:          **FILED: OCTOBER 15, 2024**

Appellant, Danny Lee Lower, appeals from the judgment of sentence

entered October 10, 2023. We affirm.

The trial court summarized the relevant facts of this case as follows.

> On May 15, 2022[,] at approximately 2:26 a.m., Trooper David
> Highhouse of the Pennsylvania State Police was on a routine
> patrol in Carlisle Borough, Cumberland County[, Pennsylvania].
> Trooper Highhouse was in a marked patrol car, in full uniform,
> traveling [w]est on the Ritner Highway toward Allen Road, when
> he [observed Appellant's] vehicle weaving within its lane. …
> Trooper Highhouse accelerated to catch up to the vehicle,
> activating his Mobile Video Recorder ("MVR"), which captured
> the vehicle driving on the right of the fog line. The vehicle then
> properly used its turn signal to get into the left lane of travel
> after which the trooper [initiated a traffic stop at a Sheetz gas
> station].

Trial Court Opinion, 7/11/23, at 1.

---

[*] Former Justice specially assigned to the Superior Court.

Trooper Highhouse approached Appellant's vehicle and demanded Appellant's license, insurance, and registration. Appellant did not have a license and had trouble locating his insurance information and registration. As such, Trooper Highhouse instructed Appellant to exit his vehicle and Appellant complied. Trooper Highhouse conducted a brief pat-down search which revealed a packet of marijuana in Appellant's pocket. Trooper Highhouse then asked Appellant to perform various Standard Field Sobriety Tests (hereinafter "SFSTs"). Based upon Appellant's performance, Trooper Highhouse determined that Appellant exhibited signs of intoxication and arrested him. "Following his arrest, [Appellant] declined to submit to a blood draw for purposes of a chemical analysis of his blood." Trial Court Opinion, 12/18/23, at 6.

On May 31, 2023, Appellant filed a suppression motion, claiming that Trooper Highhouse subjected him to an unlawful seizure without justification. The trial court convened a hearing on July 6, 2023, during which Trooper Highhouse testified. On July 11, 2023, the trial court denied Appellant's motion. The matter proceeded to a combined jury and bench trial on August 28, 2023. Ultimately, Appellant was found guilty of driving under the influence ("DUI") - general impairment, driving under suspension (sixth or subsequent), driving on roadways laned for traffic, and possession of marijuana.[1] On October 10, 2023, the trial court sentenced Appellant to pay the costs of

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 1543(a), 3309(1), and 35 Pa.C.S.A. §780-113(a)(3), respectively.

prosecution, $1,025.00 in fines, and serve an aggregate term of 35 days to one year incarceration. This timely appeal followed.

Appellant raises the following issues on appeal:

1. Was the suppression court's denial of Appellant's omnibus pretrial motion made in error, in that police testimony and Commonwealth video evidence presented at the hearing showed insufficient cause for a . . . traffic stop?

2. [Whether the Commonwealth presented sufficient evidence to sustain Appellant's conviction under 75 Pa.C.S.A. § 3802(a)(1)?]

Appellant's Brief at 8.

In his first issue, Appellant challenges the trial court's disposition of his suppression motion. In particular, Appellant claims that Trooper Highhouse lacked the requisite level of suspicion to initiate a traffic stop of his vehicle. We disagree.

Our standard of review for an order denying a motion to suppress is well established.

> [We are] limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the suppression court properly applied the

- 3 -

law to the facts." Thus, the conclusions of law of the courts below are subject to our plenary review.

**Commonwealth v. Mbewe**, 203 A.3d 983, 986 (Pa. Super. 2019), *quoting*

**Commonwealth v. Kemp**, 195 A.3d 269, 275 (Pa. Super. 2018).

This Court previously explained:

When a police officer initiates a traffic stop of a vehicle, the stop constitutes a "seizure" within the meaning of the Fourth Amendment and activates constitutional protections against unreasonable seizures and detentions. **Whren v. United States**, 517 U.S. 806, 809-[8]10 (1996). Generally, a traffic stop must be supported by sufficient facts to provide an officer with reasonable suspicion to believe that the vehicle or driver was in violation of a provision of the Vehicle Code. **See** 75 Pa.C.S.[A.] § 6308(b). However, a stop based on reasonable suspicion under [Section] 6308(b) must "serve an investigatory purpose relevant to the suspected violation." **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*); **Commonwealth v. Salter**, 121 A.3d 987, 992 (Pa. Super. 2015). Therefore, in circumstances where the violation is such that it requires no additional investigation, the officer must possess probable cause before initiating the traffic stop. **Feczko**, 10 A.3d at 1291.

**Commonwealth v. Ruffin**, 282 A.3d 796, 800 (Pa. Super. 2022) (cleaned up), *appeal denied*, 290 A.3d 1271 (Pa. 2023).

In determining what level of legal justification is necessary to support a vehicle stop, this Court previously stated:

[W]hen considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for

- 4 -

speeding and DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance.

*Salter*, 121 A.3d at 993 (citations omitted). Importantly, this Court has previously determined that "reasonable suspicion of DUI is established if a police officer observes a vehicle weaving within its lane of travel and drifting over the fog line, and this reasonable suspicion of DUI is sufficient to support a lawful traffic stop." *Commonwealth v. Velez-Diaz*, 2023 WL 2883147 *1, *7 (Pa. Super. 2023) (non-precedential decision) (holding that, upon observing the appellant's vehicle "cross the marked traffic lines and repeatedly weave within its lane of travel," the trooper had reasonable suspicion of DUI, thereby justifying the traffic stop); *see also Commonwealth v. Walls*, 206 A.3d 537 (Pa. Super. 2019); *Commonwealth v. Sands*, 887 A.2d 261 (Pa. Super. 2005) (accord).

In disposing of Appellant's suppression motion, the trial court relied upon Trooper Highhouse's testimony and MVR evidence presented by the Commonwealth during the suppression hearing. In particular, the trial court highlighted Trooper Highhouse's testimony wherein he indicated that he observed Appellant's vehicle "weaving back and forth" in its lane of travel "prior to activating the MVR." N.T. Suppression Hearing, 7/6/23, at 13. The

trial court specifically credited Trooper Highhouse's testimony in this regard. *See* Trial Court Opinion, 7/11/23, at 1-2 ("Important to note that the initial bad driving observed by Trooper Highhouse was not captured on the MVR, as the recording device had not yet been activated. However, this court finds Trooper Highhouse's testimony of that bad driving to be credible, and the reason that [Appellant's] vehicle first came to his attention."). Then, the trial court referenced Trooper Highhouse's statement that, after he activated the MVR, he further observed Appellant's vehicle

> cross the double yellow line once and then again weav[e] within his lane and [then] cross the white line onto the shoulder of the roadway [and] travel[] on the shoulder of the roadway for a short period of time before [moving] back into [the proper] lane.

N.T. Suppression Hearing, 7/6/23, at 13. Per the trial court, Trooper Highhouse's testimony was confirmed by the MVR. *See* Trial Court Opinion, 7/11/23, at 4 (stating that the MVR revealed "at the timestamp of 52 seconds . . . [Appellant's] vehicle . . . crossing the fog line."). Based upon the foregoing, the trial court held that "there was sufficient reasonable suspicion for Trooper Highhouse to stop [Appellant's] vehicle for further investigation" and determine whether Appellant was DUI. *Id.* at 4. We agree and further conclude that such a finding is consistent with our precedent. *See*

***Velez-Diaz***, ***supra***; ***Walls, supra***; ***Sands***, ***supra***. We therefore affirm the trial court's order denying suppression.[2]

In his second issue, Appellant contends that the Commonwealth failed to present sufficient evidence to support his conviction of DUI – general impairment. We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated

---

[2] On appeal, Appellant appears to argue that Trooper Highhouse lacked probable cause to conduct a traffic stop based upon a Motor Vehicle Code violation, namely, 75 Pa.C.S.A. § 3309. We disagree. Trooper Highhouse testified that he observed Appellant's vehicle cross the double yellow center line and cross the white fog line. ***See*** N.T. Suppression Hearing, 7/6/23, at 13. Trooper Highhouse's testimony was confirmed by the MVR. ***See*** Trial Court Opinion, 7/11/23, at 4 (stating that the MVR revealed "at the timestamp of 52 seconds . . . [Appellant's] vehicle . . . crossing the fog line."). Contrary to Appellant's assertions, such observations are sufficient to "give rise to suspected violation of the Motor Vehicle Code provision requiring that vehicles drive within a single lane." ***Feczko***, 10 A.3d at 1291-1292, *citing* 75 Pa.C.S.A. § 3309(a) (holding that the officer had probable cause to conduct a traffic stop for a violation of Section 3309(1) because he observed the appellant's vehicle cross "out of his lane of travel on numerous occasions").

and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Callen*, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

Appellant was convicted of violating 75 Pa.C.S.A. § 3802(a)(1). Subsection 3802(a)(1) of the Motor Vehicle Code declares:

> **(a) General impairment.**--(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1).

This Court previously explained:

> [T]he Commonwealth [must] prove the following elements: the accused was driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol. With respect to the type, quantum, and quality of evidence required to prove a general impairment violation under Section 3802(a)(1), the Pennsylvania Supreme Court [has previously stated]:
>
>> Section 3802(a)(1) . . . is a general [impairment] provision and[, as such, imposes] no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving. ... The types of evidence that the Commonwealth may proffer in a subsection 3802(a)(1) prosecution include but are not limited to, the following: the offender's actions and behavior, including manner of driving and ability to pass field sobriety tests; demeanor, including toward the investigating officer; physical appearance, particularly

bloodshot eyes and other physical signs of intoxication; odor of alcohol, and slurred speech. Blood alcohol level may be added to this list, although it is not necessary and the two[-]hour time limit for measuring blood alcohol level does not apply. Blood alcohol level is admissible in a subsection 3801(a)(1) case only insofar as it is relevant to and probative of the accused's ability to drive safely at the time he or she was driving. The weight to be assigned these various types of evidence presents a question for the fact-finder, who may rely on his or her experience, common sense, and/or expert testimony. Regardless of the type of evidence that the Commonwealth proffers to support its case, the focus of subsection 3802(a)(1) remains on the inability of the individual to drive safely due to consumption of alcohol - not on a particular blood alcohol level.

***Commonwealth v. Teems***, 74 A.3d 142, 145 (Pa. Super. 2013) (citations omitted).

At trial, the Commonwealth presented testimony that Appellant's vehicle first drew Trooper Highhouse's attention because it was "swerving or weaving within its lane of traffic." Trial Court Opinion, 12/18/23, at 5. (footnote omitted). Thereafter, Trooper Highhouse activated the MVR and further observed Appellant's vehicle "cross over the yellow center line of the roadway" and make a "more marked deviation from the lane of travel . . . across the fog line on the right side of the roadway." ***Id.*** (footnote omitted). Based upon these observations, Trooper Highhouse initiated a traffic stop. Then, during the traffic stop, Appellant

> fumbled through the vehicle "for several minutes" while attempting to locate documents, appeared agitated and angry, displayed mood swings, exhibited slow, lethargic, slurred speech, appear confused, gave delayed responses to questions,

had red, glassy bloodshot eyes, and upon exiting the vehicle[,]
was unsteady on his feet.

*Id.* (footnotes omitted). Upon prompting by Trooper Highhouse, Appellant

also admitted to having "two beers at a bar in Carlisle." *Id.* (footnote

omitted). Thereafter, Trooper Highhouse asked Appellant to perform SFSTs.

The trial court described Appellant's performance as follows.

> In performing the walk-and-turn test, [Appellant] failed to
> maintain the designated initial stance and began the test
> prematurely during the instructional phase, and in the walking
> phase stepped off the line, failed to maintain heel-to-toe, used
> his arms for balance, and terminated the test prematurely,
> thereby evidencing four clues during the walking part of the test
> and two during the instructional phase, for a total of six clues
> [of intoxication] out of a possible eight. In performing the
> one-leg-stand test, [Appellant] exhibited all four of the clues
> associated with impairment.

*Id.* at 6. (footnotes omitted). When viewing the aforementioned evidence in

a light most favorable to the Commonwealth, we conclude that the

Commonwealth presented sufficient evidence to sustain Appellant's conviction

for DUI – general impairment.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2024

- 10 -